We have one final case. I think we all know about it, and we're ready to have it called. Case number 09-1001, People vs. the 9th District. Thank you, Counsel. May it please the Court, Justin Hooper for the defendant, Appellant Evan Griffith. Your Honors, Mr. Griffith comes before this Court this morning to ask you to reverse the decision of the Circuit Court denying his motion to dismiss the indictment against him. This Court should do so because to allow the State to retry Mr. Griffith for the State's own intentional and systematic misconduct to deprive Mr. Griffith of his right to a fair trial before his first jury that would allow him to do so would violate Mr. Griffith's right to be free from double jeopardy and his right to due process. Well, we let you get through your introduction, didn't we? I was going to jump in. Well, no, we've been accused occasionally of not allowing, you know, and they prepare those opening remarks very well, and you have. Now, what are you doing asking an intermediate court of error at the State level to change, basically, what is the law of double jeopardy in Illinois? I mean, this is an argument you ought to be saving with the Supreme Court. I understand you have to make it here, but do you see the problem we have as an intermediate court of error? Yes, I understand. Is there anything in Judge Bucklow's decision that would give us the right, you think, to decide that this case was structurally erroneous? Structurally erroneous? Yes. I mean, we've got to find structural error, don't we, really, in order to go along with your argument that the retrial should be barred and he should be released? I don't believe that's the case, Your Honor. No? I don't believe structural error. And I think that's what she really held, because she said that harmless error analysis doesn't apply. But structural error under our jurisprudence, what remedy is there for structural error? I only know one, and that's a new trial. And here's in line with what Justice Cahill was commenting about, the observation you make in your brief. Judge Bucklow's decision stands alone. It is the first time ever, and you're basically asking us to do the first time ever in the state of Illinois to find double jeopardy. Well, Your Honor, I'll address that one point at a time. First, it is true that Judge Bucklow's decision was the first decision that we're aware of in the country in which a federal district judge applied this narrow exception to the additional federal habeas harmless error analysis. That does not mean that Judge Bucklow did not consider the issue of prejudice and the effect of the prejudice in light of the evidence. Judge Bucklow had to reach that conclusion and expressly state so in her decision when she applied the Darden v. Wainwright test, which has an element of prejudice to it. So it was only this additional level of harmless error analysis that was not applied by Judge Bucklow. I understand prejudice, and it certainly is a valid area that we should, you know, go over. But here's a question I wrote down early on, and I've got to read it. Is there a difference in the sort of prosecutorial misconduct between one based on a prosecutor running amok, as one might characterize the prosecutor in this case, and one where the entire prosecutorial system skewed the process against the defendant, such as in the Pennsylvania case, the Smith case? I mean, there are differences. Here it is one rogue prosecutor, if I could use that description, versus one where the entire prosecution was trying to keep exculpatory evidence from the defendant, evidence that might have led him to an acquittal had all that evidence come in. But here we have a decision by Justice Wolfson saying no rational jury could have acquitted the defendant. If no rational jury could have acquitted the defendant, where is the double jeopardy interest that you believe should turn this case? Where is the double jeopardy interest? And you can't just say fair trial, because fair trial, as far as I know, doesn't fall under double jeopardy. Well, and I think that where the courts have drawn the line when they have expanded double jeopardy beyond the current Kennedy boundary, is that they have realized that when the prosecutor reaches the point where the prosecutor has reached a willful disregard for the defendant's constitutional rights and for the integrity of the judicial process, that at that point the defendant has an interest. It's a separate interest from his right to a fair trial. It's a separate interest from his right to due process. It's an interest in having his first trial be fair and completed before that first jury. And when it's the state whose actions cross that line that prevents him from realizing that interest, that double jeopardy process. So what do we do with that determination by Justice Wolfson that had a fair trial occurred here, the result would have been the same? Well, Your Honor, with respect, Justice Wolfson's- You don't need to say that. No, you don't need to. Okay. Well, Your Honor- That's assumed and it's- We assume- I still don't want to use respect. Okay. Justice Wolfson, unfortunately, did not consider and did not have before him even the proper state standard for this issue of cumulative error. Are you sure about that statement you just made? Well, one of the things that's bemusing about this case is the subtle criticism of Justice Wolfson by Judge Bucklow. For those of us who know them both and know Justice Wolfson's background and Justice Bucklow's background, it was rather interesting that somebody like Wolfson should be criticized for not being careful enough about protecting defendants' rights. Certainly. If you look at his jurisprudence since he's been on this court, he's been one of the most vocal spokesmen for the rights of the defendants and protecting those rights. Absolutely. And in fact- I'm sorry. No, I was just- because I was bemused by the fact that the federal court, the federal district court, should undertake a mild- and it was mild- criticism of Justice Wolfson's analysis of this case. But the other part of it is that Judge Bucklow relied heavily on Justice Wolfson's assessment of the prosecutorial misconduct at play here to reach her own verdict. I mean, it was a question of which way do you outcome. There's no dispute about the nature of the prosecutorial misconduct at issue. That's correct. There is none. And Judge Bucklow recognized under federal habeas law that she was bound by the factual determinations of Justice Wolfson. That's why she followed them. Those factual determinations led to the outcome that she reached. That's correct. But in the underlying briefing on the first appeal, unfortunately, the issue of people versus blue was not raised, which would have granted- It was raised because I- On reconsideration. It was raised on reconsideration. But I also went to the original briefs, and it was raised. And I know your office didn't represent it. It was the public defender's office, but it was raised, and it was raised on reconsideration as well. And- but if you want to raise blue- Right. Go ahead. What did blue- what was the outcome in blue? The outcome in blue was a new trial. But the difference is, though, that in blue, the issue of double jeopardy wasn't raised, and it wasn't raised because double jeopardy isn't triggered until the state attempts to retry the defendant. We don't know- Do you think they've retried him since? I'm unaware. I would assume so, Your Honor. I don't know if his counsel made this argument, though. And here, Your Honor, none of the prior double jeopardy cases in the state, going back to your question, Your Honor, as to why this is proper before the intermediary court, looking even at this Court's most recent decision of which we were- of which we are aware, which is the Hollins case, that case relied on the Supreme Court's decision in Nelson. But in Nelson, the only issue before the Court was whether there was intent to provoke a mistrial, although the Court made statements regarding- Do you think intent to provoke a mistrial was at play here? Your Honor, we concede that the record does not support that position. In order for us to get relief, we need for an expansion-we need an expansion of our- You need an expansion. Now, you've been very honest and fair in your approach, and your brief is very well done. We're not criticizing you for that. I guess what I'm criticizing you for is your reliance on Bucklow as a stepping stone to get to where you want to go. The federal courts, as you know, are extremely fond of footnotes. That is true. In a footnote, Judge Bucklow says, referring to Darden and also to Greer, and in Greer she cites, A case also involving prosecutorial misconduct, the Supreme Court noted that the Chapman harmless error standard- This is footnote four, in her opinion. Okay, we're going to get to the other fact that she's relying on a footnote in yet another Supreme Court case. It's amazing the way that- It's almost as if there is a whole cadre of clerks over in the federal government who do nothing but read footnotes in Supreme Court and appellate and Seventh Circuit cases. Okay, listen to this. Can you tell me what she said? Tell me what it means, I guess. The Supreme Court- I'm at the bottom of page A49 in your appendix. You got it? It's footnote four in Judge Bucklow's opinion. I'm teasing you a little bit here, but I really want- since, you know, I'm assuming you read the footnote, because her footnote is really characteristic of how this opinion is going to turn out. If you read it, it's a harbinger of what's to come. She says, the Supreme Court noted that the Chapman Harmless Error Standard, which is basically the standard that Judge Wilson used in the Griffin case, is more demanding than the Due Process Fundamental Fairness Standard, a semicolon. That's scary right there, a semicolon and a footnote. I am not aware of any case, however, that compares the Kataika Standard with the Due Process Fundamental Fairness Standard, nor have the parties addressed the issue. And the issue, fundamentally, that you're bringing up here is an issue that she didn't even have in front of her, as far as I could see. The issue of double jeopardy? Yeah. That's true. The issue wasn't before. I know. Because, again, the state had not stopped to retry Mr. Griffin yet. And we all know the result had the due process claim been made before Judge Bucklow under Kennedy, it wouldn't have been any different. I'm just trying to figure out how you bootstrap your argument of getting into an expansion of the double jeopardy argument based on a denial of or the dismissal of your motion to dismiss the indictment. How Bucklow even helps you. Well, Judge Bucklow, if you look at, there's a three-prong test that has been developed by courts that have expanded beyond Kennedy. That's what I was going to ask you. Because it seems that there are two different paths that have been taken. One, evidence by Wallach, the federal court, where there's intent to cause a mistrial when things are going badly for the prosecution. And the other where there's a willful disregard for the possibility of a mistrial being declared by virtue of the intent prosecutorial misconduct that's being conducted before the trial judge. And so, and I'm not sure which path you're asking us to lead, to follow. I believe that Mr. Griffith could, there are actually three paths to make it more complicated. Well, help us out, and I really don't want to spend time discussing what those paths are. I want you to tell us what path you are asking us to follow and let us address that path. I believe this court should follow the path that lays out the best guidelines. What case? Which would be the New Mexico case of Brighton. That is the last case in this line of developing this three-pronged test, starting with the remand of the Kennedy case in which the Oregon courts said, no U.S. Supreme Court, this is too narrow. Right. And I've read Brighton, and I think it's a great case, and I think it does set out. But the problem I have here is that you have to first acknowledge that there are certain interests in play under the double jeopardy clause, and there are certain interests in play in the due process clause, fair trial clause. And it seems to me that they're sort of merging here, and under double jeopardy, the only real interest at play is the defendant's right to have the first trier of fact make that determination. And we've already addressed that point by saying no rational jury could have acquitted the defendant. But you're going down the path of due process, fair trial. And if it's a fair trial determination, and I don't mean to be disparaging, but it is not unlike the Hawaii standard right or wrong. I mean, it's that sort of difficulty assessing what's really at stake here under double jeopardy. Where's the end? Where's the guides? And that's why I advocate the three-pronged approach, because of all the approaches that have been taken, which would grant Mr. Griffith relief, that is the most narrow. It draws a line between the ordinary case of prosecutorial misconduct. But what is the interest involved? What interest under double jeopardy can we really apply under that three-pronged test? Well, both the Illinois Supreme Court and the United States Supreme Court have recognized that the interest at the heart of double jeopardy protection is that the state, with all of its power and authority, should not be allowed multiple attempts to convict a defendant. Here's your problem. If you're going to maintain in the state of Illinois a harmless error analysis initially, and I don't think that we can deviate from that because the Supreme Court would slap us on the wrists if we did. To get beyond the harmless error analysis, we have to go to structural error, basically. We've already got a case in a different context that warns us. The Supreme Court warns us that structural error is very rarely invoked. But let us say that this is a case where it ought to be considered. What you're really telling us is that in prosecutorial misconduct, there's egregious behavior, and then there's even more egregious behavior. And this case goes even beyond blue, I think you would probably argue. I would argue that, yes, Your Honor. And that's fine. The problem is we don't have any Supreme Court cases that tell us how to distinguish between egregious error, which gets you beyond harmless error and goes into maybe a structural error analysis, which is still going to lead to a new trial, and the kind of egregious error that you're talking about that is so bad that even a new trial won't cure it because it's so fundamentally unfair. And there I think you've got a philosophical problem that just, you know, that you can't, that dog isn't going to hunt in the state of Illinois at the moment, given our jurisprudence and our Supreme Court cases. And even Justice Wilson, who's very sympathetic and has been throughout his career to these hideous petitions and post-conviction petitions and very serious, rigorous review on post-conviction analysis, couldn't find it. And if you can't convince Justice Wilson, you're going to have a problem, I think, with the courts,  I want to interject here a little bit, only because I think the Justice Wilson analysis really doesn't interact, doesn't, no longer is part of this process, because, you know, the federal habeas was granted and the new trial is coming up, and I might even go so far as to say maybe we did get it wrong. Maybe we did get it wrong on the direct appeal. But even if we got it wrong on the direct appeal, what was the remedy? A new trial. Where do we get, where do we get the, and here's, when you talk about, because you just made the allusion to a second bite at the apple. You didn't use that term, that phrase, but you used it in your brief. And the point I had was, in this case, the prosecution didn't need a second bite at the apple. They didn't even need a big bite at the apple the first time around. All they needed was a little nibble at the apple and you would have gotten a conviction. He testified, just, and this is, and this goes back to what you pointed out in your brief, people versus tenor, that there's collateral estoppel, and part of that is the estoppel that he made of what amounted to a judicial admission that he committed felony murder while he testified. And that's all he was convicted of. So how do we get to the point where we can say one prosecutor's misconduct during the course of the trial will bar the people from the state, people of the state of Illinois from penalizing an individual whose guilt is overwhelmingly shown? Why should the people of the Illinois, state of Illinois, be punished in that sense and not the prosecutor? I mean, why isn't it, why isn't the remedy much like they talk about, you know, search and seizure where the penalty should be against the officer that commits the violation and not against society? But, you know, that's a different argument. Here, I mean, the question still is, why should a second trial be barred? Well, two responses to that. First, Your Honor, although this Court did find that no rational juror could have found Mr. What about the judicial admission? You avoided that restatement in your brief, but you did. What about the judicial admission? Mr. Griffith did confess to this crime to several people. But Mr. Griffith also raised I understand. What about the judicial admission? We're talking about not his statements out of court. Right. We're talking about his statements when he testified. But Mr. Griffith also raised serious defenses regarding his psychiatric state of mind at the time. Under the category of self-defense, not under the category of I'm not guilty. I believe that his defense is of post-traumatic stress disorder and acute stress disorder, which said that because of the stress at the time, based on his past abuse, that he could not form the requisite criminal intent for any of these felonies. And he raised this. That was what the prosecutor argued all of his prior crimes and character evidence went to was defeating that defense. If she hadn't done what she had done, what she did, we don't know. We really don't know and we never will. And that's the problem here. Mr. Griffith should have gotten a fair trial the first time. The prosecutor crossed the line on so many occasions that this court said it called into question the state's commitment to fair and just enforcement of the law. And we don't know what would have happened. And Mr. Griffith shouldn't have to go back to trial 25 years later because the state intentionally deprived him of that fair trial the first time. And that's what's at issue here and what's at stake in his double jeopardy. You've got a very good argument, it seems to me, except that it's an argument of First Depression and you're before an intermediate court of error. I can say you can draw wonderful analogies between our suppression of illegally obtained evidence, which we throw it all out, which is a dramatic benefit to the defense. Why shouldn't we do the same thing in the case of egregious prosecutorial misconduct? We're going to punish police misconduct by not allowing the state to use the evidence. And then we've got a rogue prosecutor here and you're never going to get a better one than this one. Let's face that. This is a good one for you. Then the behavior of this young lady in the course of this trial. This is the best you've got in terms of prosecutorial misconduct. If you can't get a dismissal on this, you're just not going to get a dismissal on the basis of prosecutorial misconduct. You're basically, philosophically, what Justice Garcia is saying is that if he had been on the appellate court on this panel, he might have been arguing. I'm just saying now that hindsight. I'm saying 2020 and after Judge Buffalo's decision, I can see where. And in fact, it's a complaint. It is beyond our dispute now. He's entitled to a fair trial. But I would point out that the analogy to search and seizure isn't complete. It never are. Because in fact, it's still a matter of what evidence was seized improperly. Because if it was good evidence seized, you still have to go to trial. And even if some evidence is illegally seized, there's still the whatever that separation is between the seizure and there's still the process that has to be undertaken to resolve the case. And here you're saying that the process itself should be cut off? Well, the process should have worked the first time properly, and it didn't. And Mr. Griffith shouldn't be made to pay for that. Mr. Griffith has a right not to be put on trial again. We're the state's intentional misconduct. It's the reason that he's put to that problem. And also, in addition to that, going back to this analogy or this line of analogy, I see several problems with it. First, when you're talking about an exclusionary rule, you can actually identify the excluded evidence, which should be excluded. Here you're talking about a process and a trial that should have been fair and wasn't, and it started before trial and it continued all the way to the end. Second, as the Arizona Supreme Court recognized in Jorgensen, there is a pragmatic necessity here that, in addition, there's both the interest of the defendant. And in every one of the Arizona cases, Jorgensen and Poole, the possibility of an acquittal was raised by that Arizona Supreme Court. And that could mean that those cases fall under the wallet and not underbreed the New Mexico case. But the concern that the court had, though, was not with the weight of the evidence, but rather whether the integrity of the judicial process had been affected in a way that required this rule. It recognized both that there was this interest for the individual in not being put on trial twice whereas the state's fault would have crossed this line, but also recognized that as a matter of pragmatic necessity, that the only way to keep a prosecutor from crossing that line was to have this rule in place, because otherwise the prosecutor, like you said, just gets a second bite of the apple. But the second bite of the apple also has that problem because you mentioned it early on in your argument that when you have a second trial, the state's resources are once again amounted. In fact, it may have an easier time the second time around than the first time around because of the very test run, so to speak, of the first trial. But in this case, when the evidence is overwhelming, the test run may not have been a test run at all. It may have been simply the outcome that was almost preordained. But by that logic, Your Honor, with respect, why do we even have a trial then? Why don't we do that? No, no. But we have, as a court of review, the opportunity to review the trial transcripts and come up to an assessment. Is this harmless error or is this a sort of error that could have made a difference at trial? Or can we reach a conclusion, like Justice Wilson did, that no rational jury could have acquitted this defendant? But I don't want to prolong this, so why don't you go ahead and wrap it up. You'll get a few minutes.  Thank you, Your Honor. All right. Thank you. Good morning, Your Honors. My name is Marcy Jacobs. I represent the State of Illinois. In our view, the defendant's entire argument relies on the illogical and circular concept that because the law in this case doesn't favor his position, it simply doesn't apply to him. His argument boils down to another. That is inaccurate. I think he's seriously and in the highest professional way making suggestions that Illinois should join the states that have expanded the protection under double jeopardy to include the situation here. So to call it illogical and to call it circular, I think, is inaccurate. He's never going to get a better case than this one. I mean, you've got a habeas going now on the underlying conviction in this case where there's recantation testimony. I don't know what the status is. It's been affirmed by the Seventh Circuit. Well, even so, it's not part of this record here. Correct. The interesting thing about it is that we're about to go the other way. It adds another dimension to this case. And both, unfortunately, both you and counsel for Mr. Griffith are young enough to make a career out of this case. Go on forever. To answer your point first, Your Honor, I do not believe that this is a case of first impression. This has been decided by our state. Hold it. Let me just bring in what Justice Cahill said about the nature of the prosecutorial misconduct. I hope that what you've just said is not an admission that this sort of prosecutorial misconduct that reached the level that it did in this case is something that we've experienced in the past. In fact, Your Honor. That isn't your argument, is it? Well, my argument is. So this is somewhat of a unique case if that is not your argument. I do not believe that this is the most egregious prosecutorial misconduct. Give us a site that is not as blue, more egregious. Well, first of all, let me just say that in the Seventh Circuit case of Doyle, there was federal prosecutors that were providing witnesses with money. We know that. We all know that. That is not the same situation. That is behind the scenes. We don't know. My point is, certainly. And it didn't involve a violation of the judges. This is the kind of, my brother was worse than this. No. What I will point out to you is point blank that the cases, the Illinois Supreme Court, the cases in which they made the decision not to broaden the scope of the Illinois state constitution were in cases that had some very similar conduct to in this case. For instance, People v. Davis was a case where there was multiple findings. We know Davis. In Davis, there was never a motion for a mistrial put forth by the defendant. If there is no motion for a mistrial, I don't see how you can possibly lay claim to a double jeopardy claim. I'm just pointing out. I'm not sure that your statement is accurate, that in fact the Supreme Court has addressed a very similar claim in earlier decisions. I don't see it. Some of the prosecutorial misconduct that was found in Davis was that the jury, out of repeated, it was not just a single isolated incident of prosecutorial conduct. As in this case, it was repeated. And one of them was that the prosecutor in that case informed the jury that the defendant had been previously sentenced to death. Similarly, in the People v. Brisbane, one of the many findings of prosecutorial egregious arguments of prosecutorial egregious conduct was that the prosecutor improperly mentioned a first murder. Now, 90% of the allegations of prosecutorial misconduct, or a huge giant percent in this case, revolve around almost identical allegations. What if we limit our consideration to those allegations of prosecutorial misconduct that concern the judge's ruling, which the prosecutor violated in this case, or her own representation as to how she would use certain evidence against the defendant and then violated that representation? Why don't we just limit it to those allegations? You can limit it to any allegations you want, because nonetheless, whatever, the only thing that's important... I simply suggested that because that distinguishes those cases that you've just referred to. Here, we're talking about violations of court orders. Well, even erroneously offering evidence, even violations of court order, are not... Give us a cite. Are not the... Or a violation of court order. ...are not the intention that this, that is before this court. There's only one intent that this court can look at based on the stare decisis of our state, and that is the intent to provoke a mistrial. And in People v. Ramirez, which is an Illinois Supreme Court case, a point blank states that purposely offering erroneous evidence, while it may end up to be a constitutional error that would require a new trial, which this defendant is getting, it does not equate to the intent necessary for the double jeopardy remedy. The double jeopardy remedy has never, ever been intended to be a punishment for the state, a punishment to the state. It is a... It's intended as a shield for the defendant, not a sword to punish the state. The double jeopardy clause, the driving force behind the double jeopardy clause has always been about the sufficiency of the evidence. If the state doesn't get it going in the first trial, it doesn't get a second shot to go out, try and drum up more evidence while a defendant sits around in a state of anxiety, wondering if we get to take multiple bites of that apple. It was never, ever intended as a punishment for the state. It's about sufficiency of evidence. And that's why the U.S. Supreme Court, our Illinois Supreme Court, our Illinois appellate courts, including this one, and, by the way, a majority of our sister states, not a tiny little minority, a majority, 20 and counting... Isn't that how it starts? Isn't that how it starts? It's a gradual process that doesn't require everybody jumping on the bandwagon. It could be a slow process. It could be a slow process, but in this case, that's not what happened. In this case, in fact, the cases that came after criticized that majority. There's multiple sister states that have criticized the reasoning in those cases, and, in fact, one state, because of that very criticism, the state of Texas, reversed itself and ended up doing what Illinois did, which is to follow the well-reasoned, sound principles of Oregon v. Kennedy that directly invoke when the double jeopardy protection should be invoked. The double jeopardy remedy is a very narrow remedy, and it is to be invoked only when its exact protections are trying to be subverted, which was not the case in this case. And while there may be lots of prosecutorial error and lots of... that even rise to the level of constitutional error, what defendant wants to do is to bootstrap an additional remedy that he's... by conflating the concepts of due process and what remedy you get from a due process error into what remedy you get from a double jeopardy violation. And this simply is not it, and it is not a case of first impression. Our courts have been point-blank asked to expand the Illinois Constitution in this regard, and they have said multiple times, repeatedly, they will not do it, they are not doing it. 20 of our systems... Let's make it clear. They did not say it in flat, clear terms that we will not consider such an expansion. What they've said is that the grounds for expanding it don't apply... or the facts of the case before it have not satisfied at least the minimum considerations, such as in Davis when the Supreme Court said... the argument may be made that the reversal of a trial court's erroneous denial of a motion for mistrial, which the state has intentionally provoked, deserves the same preclusive effect as if the mistrial had been declared in the first instance. So the Supreme Court is acknowledging that it's willing to reconsider with the right case, and the question is whether this is the right case. Well, first of all, there's two different aspects that we're looking at here. Defendant is asking you to expand the law in not one but two distinct ways. One distinct way in which he's asking you to expand the law, which is what you just addressed, is that he does not want this law to just apply to mistrials anymore. Now he wants you to expand it to reversals for reasons other than the sufficiency of the evidence, which would be a historic pronouncement. Let me ask you one quick question, because we are getting... we're sort of going over the same ground here. But do you acknowledge or do you read Judge Bucklow's decision in effect finding structural error in the first trial, the 1999 trial? I absolutely agree with this Court that it could be read that way, but that's the very point, because even if it is read, even if this is found as a structural error, in Illinois, People v. Blue, we've made our remedy. People v. Blue said point blank. The remedy for a structural error-type situation is a new trial. And Judge Bucklow absolutely, even though it wasn't addressed, she had the authority under the fundamental justice to allow this to go to retrial. Was it ever requested before Judge Bucklow? My understanding, when I read the same... Well, if she had gone there, then the state would have gone to the 7th Circuit. We believe, and as you know, we believe it should have gone to the 7th Circuit anyway. Well, that was up to your office. That was up to the Attorney General's office. And we vigorously disagree with their decision not to appeal this case to the 7th Circuit. All right. You going to wrap it up? Well, I did want to point out that there are two distinct measures, and you just addressed one of them, and indeed there has been no finding whatsoever in this case that there is an erroneous ruling of no mistrial, first of all, but the other measure is to expand the prosecutorial conduct, and Davis did address that prosecutorial conduct in the context that it was supposed to and that this Court is supposed to. It didn't address, for any other reason other than intent to provoke, and that is the only context this Court can address. Let me stop you, regarding the erroneous denial of a mistrial. Yes. Isn't that what Judge Bucklow, in effect, said, that there was an erroneous denial of the numerous requests for a mistrial in this case? I don't think she said that, but... She granted a new trial. But the prosecutorial conduct that could lead to a mistrial does not equate to the same conduct that would lead to a double jeopardy, bar a retrial. You still have the problem of the deliberate intent to cause a mistrial. Clearly, as bizarre as the language and behavior of the prosecutor in this particular case, there's nothing in the record that indicates that it was deliberately being done to provoke a mistrial. This was a long, complicated, expensive, source-depleting case tried 14 years after defendant killed Leroy Shanks, with witnesses that were hard to locate and subjecting them... You're not defending the prosecutor. I'm saying that there's no way, shape, or form, as admitted by defendant, that any prosecutor would have wanted to retry this case. This case was complicated. It was years after the murder occurred. There are so many issues. It is so rare. Oregon v. Kennedy states how rare it would be for a prosecutor to want to retry a case. So if it is the case where a prosecutor is found to have that intent, that's what's extraordinary. And that's why you get that extraordinary remedy of double jeopardy, why that remedy is invoked. And that could happen when the case is going against the prosecution and they want an acquittal so that they can... Which you obviously know was not in this case. I mean, all but one of a defendant's motions for mistrial occurred after the judicial confession. And the first one occurred after the entire state's case was put in, and obviously we all know that it went in overwhelmingly in favor... So there's no other intent to look at. All prosecutors are trying to get convictions. If they do so by using erroneous means that end up being found to be constitutionally erroneous, that does not equate to trying to support double jeopardy protection. When you just said that all prosecutors are trying to... Their intention is to get a conviction. And that is Justice Stevens' exact point, that the standard in Kennedy is nearly insurmountable. How do you ever prove that the prosecution intended to cause a mistrial? Except in the New Mexico case, there were two instances in the entire United States of reported decisions where that did occur. And only in cases where the evidence was not going well. And I pointed out in my brief, all of those cases where those states went rogue and ended up expanding their constitutions is because the evidence wasn't going well. I see you use the term rogue in reference to those courts. Absolutely. We use it in reference to the prosecutor. Well, the majority of our courts have followed what Illinois has done. We've followed the Illinois Supreme Court. All right. Thank you very much. Thank you. And I'd just like to make one quick point. And that is that, as I believe you were mentioning, we believe that you have the power to decide this. Because none of the cases in Illinois are factually similar. And the cases in the Illinois Supreme Court that would otherwise bind this court only considered the only issue actually raised was whether there was intent to provoke mistrial, not whether expansion was proper on the facts of that case. But, Your Honors, if you decide to the contrary, we ask that you write in your opinion that this is a case proper for the Supreme Court's consideration. And with that, Your Honors. They don't like us to do that either. We'll consider it. But in any case, you're Mr. Hoover, right? That's correct. Okay. I commend you on the quality of your brief and your oral presentation, and you as well. The briefing in this case was excellent. On both sides. All right. Thank you very much. The case will be taken under advisement, of course, in recess.